UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

NET PROMOTION, INC.,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

Civil No. 12-MC-0036 (DSD/TNL)

**REPORT
&
RECOMMENDATION**

---

## I.    INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Net Promotion, Inc.'s ("Petitioner's") Petition to Quash a summons issued by the Internal Revenue Service (Doc. No. 1). This matter has been designated to this Court for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.2(B). *See United States of America v. Mueller*, 930 F.2d 10, 12 (8th Cir. 1991). Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that the Petition to Quash IRS Summons be **DENIED.**

## II.    BACKGROUND

Petitioner is a corporation with mailing addresses in Lynden, Washington and Cassis, France. (O'Donnell Decl. ¶ 6.) The French Tax Authority ("FTA") began investigating Petitioner's income tax liability, and sent letters to the IRS requesting financial information for the years 2008, 2009, and 2010. (*Id.* ¶¶ 2-4.) Specifically, the FTA requested statements of a US Bank National Association ("US Bank") account

1

owned by either Petitioner or Stefano Brozzini, Petitioner's representative. (*Id.* ¶¶ 6-8.) These requests came pursuant to the Convention between the Government of the United States of America and the Government of the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital (the "Treaty"). In relevant part, the Treaty provides for the exchange of tax and financial information between France and the United States. (*Id.* ¶¶ 2-3.)

Douglas O'Donnell, an Assistant Deputy Commissioner of the Internal Revenue Service,[1] acts as the United States Competent Authority under tax treaties and tax information exchange. (*Id.* ¶ 1.) In that capacity, he reviewed the FTA's request and determined that it was within the Treaty's guidelines. (*Id.* ¶ 5.) Assistant Deputy Commissioner O'Donnell attests that "the same type of information requested" here would be available to the United States upon request to the French government, that "there is sufficient reason to believe that the summons may produce information that may be relevant to the determination of" Petitioner's French income tax liabilities, that "the summonsed information was not in the possession of the [IRS] . . . [or] the French Tax authorities." (*Id.* ¶¶ 10-12.) The IRS accordingly issued summonses to US Bank and Petitioner. (Amos Decl. ¶ 9-12, Ex. 2.)

Petitioner filed the instant Petition to Quash Internal Revenue Summons (Doc. No. 1) on April 25, 2012, and the Government filed a responsive memorandum on June 19 (Doc. No. 5) opposing the petition.

---

[1] The full title of O'Donnell's position is Assistant Deputy Commissioner, International, Large Business and International; the position was formerly titled Director, Competent Authority and International Coordination, Large and Mid-Size Business division. (O'Donnell Decl. ¶ 1.)

2

## III. DISCUSSION

### A. Standard of Review

The standards for evaluating whether to grant a petition to quash are the same as those required to enforce a summons. *See Kondik v. United States*, 81 F.3d 655, 655-56 (6th Cir. 1996) (citing *United States v. Powell*, 379 U.S. 48 (1964)). The Supreme Court stated:

> [The IRS] need not meet any standard of probable cause to obtain enforcement of [a] summons . . . . [It] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the Code have been followed[.]

*Powell*, 379 U.S. at 57-58. "The IRS may satisfy its burden by merely presenting a sworn affidavit" of the issuing officer or agent "attest[ing] to these facts." *United States v. Sindel*, 854 F. Supp. 595, 599 (E.D. Mo. 1994) (citing *United States v. Leventhal*, 961 F.2d 936, 939-40 (11th Cir. 1992)), *rev'd in part & aff'd in part on other grounds*, 53 F.3d 874 (8th Cir. 1995); *see United States v. Norwood*, 420 F.3d 888, 892 (8th Cir. 2005) (citing *United States v. Moon*, 616 F.2d 1043, 1046 (8th Cir. 1980)). This framework also applies when considering a summons issued pursuant to a request by a treaty partner. *United States v. Stuart*, 489 U.S. 353, 356 (1989). After the IRS makes a prima facie showing, the burden shifts to the respondents. *See United States v. Meininger*, 101 F.R.D. 700, 703 (D. Neb. 1984) (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 361 (1977)).

An abuse of process occurs when a summons is issued "for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. The taxpayer carries a "heavy" burden to prove that the IRS has abused the court's process. *See Stuart*, 489 U.S. at 360. He must "disprove the actual existence of a valid . . . collection purpose by the Service." *LaSalle Nat'l Bank*, 437 U.S. at 316.

B. Legal Analysis

The Government has made a prima facie showing. It supplemented its Memorandum opposing the Petition with a sworn declaration of Assistant Deputy Commissioner O'Donnell. This case is nearly indistinguishable from *Mazurek v. United States*, where the IRS received a request from the FTA—pursuant to the Treaty—for a summons to collect relevant financial information. 271 F.3d 226, 228 (5th Cir. 2001).

> Assistant IRS Commissioner Lyons reviewed the FTA's request and submitted an affidavit to the district court stating that: (1) the FTA's request was properly made; (2) the requested information was not already in the possession of either the IRS or the FTA; (3) the requested information could be relevant to an investigation of Mazurek's French civil tax liability; and (4) the same type of information could be obtained by the FTA under French law and, if the situation were reversed, the United States could properly request such information from France. . . . In addition, the IRS meets *Powell*'s first ("legitimate purpose") requirement because it is attempting to fulfill the United States's obligations under the Treaty efficiently. Assisting the investigation of a foreign tax authority has been held to be a legitimate purpose by itself.

*Id.* at 230. Here, Assistant Deputy Commissioner O'Donnell's declaration provides an almost identical basis for the Government's request: the FTA requested the summons according to the Treaty, the requested information was not already in the possession of

4

either the IRS or the FTA, the information may be relevant to the determination of French income tax liability of Petitioner, and France could furnish the same type of information to the United States if the situation were reversed. Most importantly, Petitioner has neither disproved any of the *Powell* elements nor met its heavy burden of showing that enforcing the summons would abuse the Court's process. Accordingly, the Court determines that the Government has met its prima facie burden.

Petitioner argues that the summons is defective "because it was not issued in good faith and in compliance with French law, with the relevant treaty provisions, [or] with U.S. law." Pet. ¶ 9. With respect to the relevant treaty provisions and the IRS's compliance with U.S. law, the Government has provided sworn declarations that directly address these points and Petitioner has offered no facts to contradict them.

Petitioner's argument that the summons was not issued in compliance with French law, along with its argument that it has no nexus with France and therefore it is not subject to French income tax, also fail. The Court need not decide the legitimacy of the FTA's investigation, but the legitimacy of the Government's compliance with the FTA's request. *Mazurek*, 271 F.3d at 231. "So long as the IRS itself acts in good faith, as the term was explicated in [*Powell*] and complies with applicable statutes, it is entitled to enforcement of the summons." *Stuart*, 489 U.S. at 370. "Requiring district courts and the IRS to look into the good faith of the requesting country's investigation would . . . necessitate an inquiry into the propriety of the FTA's actions under French law." *Mazurek*, 271 F.3d at 231-32. Whether Petitioner incurs French income tax liability has no effect on whether the IRS is acting in good faith to meet its obligations under the

Treaty. Here, Petitioner has alleged no facts contradicting the Government's sworn declarations and therefore has not met its heavy burden of rebuttal. Accordingly, the summonses are enforceable.

## IV. RECOMMENDATION

Based on the foregoing, the record, and memoranda, **IT IS HEREBY RECOMMENDED** that Net Promotion's Petition to Quash IRS Summons (Doc. No. 1) be **DENIED.**


Dated: September 18, 2012        *s/ Tony N. Leung*
                                 Magistrate Judge Tony N. Leung
                                 United States District Court
                                 For the District of Minnesota


*Net Promotion, Inc. v. United States of America*
File No. 12-mc-0036 (DSD/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **Ocobter 2, 2012.**